LYONS, Justice
(dissenting).
I respectfully dissent from the order quashing the writ of certiorari.
This petition for the writ of certiorari seeks a review of the Court of Civil Appeals’ reversal of the trial court’s construction of a provision in a settlement agreement entered into as part of the divorce proceedings between Constance P. Smith (“the former wife”) and Gregory L. Smith, Jr. (“the former husband”), in May 2001. Smith v. Smith, 892 So.2d 384 (Ala.Civ.App.2003). As the Court of Civil Appeals pointed out:
“After providing for the division of the parties’ retirement accounts, the division of certain real property, the allocation of various items of personal property, and the husband’s payments to the wife of alimony in gross, the agreement recites, in paragraph 9:
“ ‘Each party shall keep any other account and any other property presently in their individual names with [former] Wife disclaiming any and all interest she may have in any interest in which [former] Husband omis in any business or other property[1] including, but not limited to, Flowerwood Nursery of Alabama, Flowerwood Nursery of Georgia, Flowerwood Liners, PDSI, Summit Landscaping, Inc. and Flowerwood Management.’ ”
892 So.2d at 385 (emphasis added). The agreement also required the parties to “ ‘execute all necessary documents to carry out the provisions of their agreement.’ ” 892 So .2d at 385.
The record contains a deed, dated August 17, 1988, and recorded on August 22, 1988, conveying a 19-acre parcel from Charles W. Barnhill and Virginia P. Barn-hill, husband and wife, to the former husband and the former wife, as joint tenants with the right of survivorship. The record also contains an unrecorded instrument dated August 18, 1988, and signed by the former husband and the former wife, which reads as follows:
“ ‘Deed Correction
“ ‘WHEREAS the Flowerwood Nursery paid a sum of $69,000 to [Charles W. And Virginia P.] Barnhill for a parcel of land ..., and said land was incorrectly titled in the name of Gregory L. Smith, Jr., and Connie J. Smith/[2]] and
“ ‘WHEREAS it is intended that the land be used by Flowerwood Nursery in its growing operations, and
“ ‘WHEREAS it is not intended that the Smiths benefit from or dispose of *391 said property without proper compensation to Flowerwood,
“ ‘NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS that Gregory L. Smith, Jr., and Connie J. Smith, for and in consideration of the sum of Ten Dollars ($10.00), agree that for a period of Ninety-Nine years they shall sell said parcel to NONE OTHER THAN Flowerwood Nursery, Inc., a corporation of Alabama, and shall sell said parcel at a price of Ten Dollars ($10.00). In the event of their deaths, said property will automatically be transferred as if sold as described above.
“ ‘IT IS FURTHER AGREED that Gregory L. Smith, Jr. and Connie J. Smith shall not use said property without paying Flowerwood Nursery a rate of thirty five hundred dollars per acre for the amount used by them, and agree further that at this time true and correct deeding shall be executed and recorded, reflecting a correct ownership of, and payment for, said parcel.
“ ‘/s/ Gregory L. Smith Jr.
“‘/s/Connie J. Smith’”
892 So.2d at 386-87.
The Court of Civil Appeals further noted:
“The [former] husband testified that Flowerwood Nursery is a corporation owned by his family; that in 1988 he was the corporate secretary; and that he is now the president and general manager. He presented evidence that Flowerwood Nursery had paid for the 19-acre parcel in 1988; that it had listed the property as a capital asset on its books since that time; that it had made numerous improvements to the property; and that the property was essential to its business operations. The [former] husband testified that the August 17, 1988, deed from the Barnhills was the result of a tax-free exchange. He explained that naming the [former] wife and him as grantees in the deed was a ‘mistake’ and that, therefore, he had typed a document that he called a ‘Deed Correction’ the following day, August 18, 1988. The [former] husband acknowledged that the ‘Deed Correction’ did not purport to transfer title to the property to Flowerwood Nursery and that the parties never executed another deed conveying the property to Flowerwood Nursery.”
892 So.2d at 387.
The Court of Civil Appeals further noted with respect to the proceedings below:
“After the divorce, the [former] husband sought to have the [former] wife execute a quitclaim deed transferring to him her interest in a 19-acre parcel of real property located in Baldwin County and used in connection with the operation of the husband’s business, Flowerwood Nursery. The [former] wife refused to execute a quitclaim deed; instead, she filed suit in Baldwin Circuit Court seeking a sale for division of the 19-acre parcel.
“In July 2003, the [former] husband filed an action seeking a judgment declaring that he had been awarded the 19-acre parcel by virtue of paragraph 9 of the agreement incorporated into the divorce judgment; he also filed a motion to enforce the divorce judgment, seeking to compel the [former] wife to execute a quitclaim deed to the property. The [former] wife answered, alleging that she still had an interest in the 19-acre parcel that she had not relinquished by agreeing to paragraph 9 of the agreement. Following a hearing, the trial court held that, pursuant to paragraph 9 of the agreement, the [former] husband had been awarded the disputed proper *392 ty; the court ordered the [former] wife to execute, within 30 days of the entry of its judgment, the necessary deed to convey title to the [former] husband.”
892 So.2d at 385-86 (footnote omitted).
The Court of Civil Appeals reversed the judgment of the trial court, holding that the trial court “could have ruled only that the 19-acre parcel was held by the [former] husband and the [former] wife as joint tenants and that the [former] wife’s interest in the property was not affected by paragraph 9 of the agreement.” 892 So.2d at 388. In other words, according to the Court of Civil Appeals, paragraph 9 of the agreement was unambiguous and did not operate to divest the former wife of any interest in property held jointly by her and her former husband.
In his petition for the writ of certiorari, the former husband contends that paragraph 9 is ambiguous. I agree, and I would reverse the judgment of the Court of Civil Appeals. If the purpose of the portion of the sentence in paragraph 9 in which the former wife purports to disclaim any interest in the former husband’s property is to repudiate the former wife’s interest in property owned solely by the former husband, then it is redundant to the preceding portion of that sentence, which provides that “[e]ach party shall keep ... property presently in their individual names.... ” Thus, the disclaimer is ambiguous and, its grammatical shortcomings notwithstanding (see note 1), it is susceptible of a construction giving it a field of operation that includes assets other than those held solely in the former husband’s individual name, namely, property held in a joint tenancy. Therefore, even if one accepts the conclusion of the Court of Civil Appeals that a joint tenancy existed, the judgment of the trial court is due to be affirmed.
I recognize that the conclusion as to the existence of a joint tenancy was not attacked by the sole issue stated in the petition for the writ of certiorari, dealing with the failure on the part of the Court of Civil Appeals to find ambiguity. But overturning the conclusion as to the existence of a joint tenancy is not a prerequisite to reversing the judgment of the Court of Civil Appeals. The former husband argues as follows in support of his contention that an ambiguity exists in paragraph 9 of the settlement agreement:
“Does that language [the phrase providing that the former wife ‘disclaim[s] any and all interest she may have in any interest in which [former] Husband owns in any business or other property’] mean that [former] wife disclaims her interest only in property which petitioner owns and not which she owns even though her ownership may be joint with petitioner? Does it mean that she waives her interest in all property in which petitioner owns any interest whether it is joint with her or not? Or, is the phrase so imprecise that it cannot be interpreted with certainty without reference to other language in the sentence and to parol evidence?”
(Emphasis added.) This argument clearly advocates a reversal of the judgment of the Court of Civil Appeals based on its finding of a lack of ambiguity in paragraph 9 of the settlement agreement, notwithstanding the finding of the Court of Civil Appeals that the 19-acre parcel was held in a joint tenancy.
I would reverse the judgment of the Court of Civil Appeals and remand the case with instructions to affirm the trial court’s judgment. Therefore, I must dissent.
SEE and JOHNSTONE, JJ„ concur.

. Although the emphasized text is difficult to read, there is no misprint; the text is reproduced here exactly as it appears in the settlement agreement.

. The former wife is referred to in the record both as "Constance P. Smith” and "Constance J. Smith.” The notice of appeal carries the name "Constance P. Smith.”