*525
 
 THOMAS, Judge.
 

 Rhonda Sue Stewart (“the wife”) appeals from a judgment of the Randolph Circuit Court divorcing her from Marlon Luke Stewart (“the husband”) and dividing the parties’ property, awarding the parties joint legal and physical custody of the parties’ minor daughter and granting the husband specific custodial periods, and awarding the wife child support.
 

 The parties were married on May 18, 1995. The parties have one minor child — a daughter who was born on September 27, 1997 (“the daughter”). The wife had two children from a previous marriage whom the husband adopted, Brandon and Amanda; neither Brandon nor Amanda is a minor.
 

 At the time the parties married, the husband owned and operated an automobile-repair shop named Quality Repair Service (“the repair shop”). The husband sold the repair shop on October 20, 2006, to Brandon and the parties’ nephew, Dustin Messer, for $245,000 — Brandon and Messer paid $50,000 in cash, which the husband used to pay off certain outstanding debts associated with the repair shop. The husband financed the remaining $195,000 of the purchase price for Brandon and Messer. Brandon and Messer later sold the repair shop at an auction for $150,000. This amount was not enough to satisfy the husband’s remaining debt on the repair shop that he owed to Small Town Bank. The husband used an 8.5-acre tract of land and a 5-acre tract of land, both of which he had purchased from his grandfather, as collateral to secure the remaining debt; as of the date of the trial, the husband owed Small Town Bank $46,000. After selling the repair shop, the husband continued to work at the repair shop making $250 per week. In addition to working at the repair shop full time, the husband also held mortgages on three unidentified properties from which he received payments totaling $591.00 per month; all three of the mortgages will be paid off in the next three to five years. According to the Child-Support-Obligation-Income-StatemenVAffidavit that the husband filed with the trial court, the husband’s monthly income was $1,674.44.
 

 Before building and opening the repair shop, the husband worked as a welder and also had a license to operate heavy machinery. He testified that he did not know if he could make more than $250 per week as a welder, but he said that being close to the daughter was more important to him than any extra money he could make. The husband also testified that his heavy-machinery license had expired.
 

 There was evidence indicating that as recently as 2007 the husband had assets totaling approximately $958,000. However, the husband’s undisputed testimony was that nearly all of those assets had been sold. The husband’s 2007 income-tax return indicates that his adjusted gross income in 2007 was $38,680.
 

 The wife testified that she had worked as a nurse before the parties’ marriage but that she had not been employed when the parties married. She had worked intermittently as a nurse for various employers throughout the early years of the parties’ marriage. The wife stated that she had worked full time the three years immediately preceding the parties’ separation for Taylor’s Retirement in Roanoke. This was the longest period the wife had worked during the course of the parties’ marriage. At trial, the wife stated that she is a licensed practical nurse and that she worked for Amedysis Home Health. She had begun working for Amedysis Home Health in April 2008. As of the time of trial, the wife earned $29,000 annually and paid $202 per month for health-
 
 *526
 
 insurance coverage for her and the daughter.
 

 During the course of their marriage, the parties lived in a double-wide modular home on three acres of land (“the marital residence”). The parties bought-the marital residence with a mortgage loan, $36,000 of which remains outstanding; that specific property had been appraised for $110,000. Pursuant to a pendente lite order, the wife was responsible for the payment of the mortgage while she resided in the marital residence. However, the wife testified that at the time of the trial she was two payments and two “penalty payments” behind on the mortgage. The wife testified that she had not had the money to pay the mortgage payments.
 

 At the time the divorce judgment was entered, the parties owned two vehicles, a 1998 Ford Explorer sport-utility vehicle, which was inoperable at the time of the trial, and a 1999 Ford truck. After the parties separated in October 2007, the wife financed the purchase of a 2009 Chevrolet Impala automobile; approximately $21,000 of indebtedness remains on the wife’s automobile loan. The wife requested that the trial court award her the Impala, subject to the outstanding debt on that vehicle.
 

 Before the parties’ marriage, the husband had inherited 31 acres of land, subject to a life estate held by the husband’s mother, from his father. During the course of the parties’ marriage, the parties had planned to sell the marital residence and live in a single-wide trailer on the 31-acre tract of land while building a house on the 31-acre tract of land. The parties purchased a single-wide trailer with a mortgage loan, $30,000 of which remains outstanding, and placed it on the 31-acre tract of land. The parties never built a home on the 31-acre tract of land.
 

 The husband’s mother resides in a home on the 31-acre tract of land. The wife testified that during the course of their marriage the parties had spent money to improve the 31-acre tract of land. Specifically, the wife testified, a fence had been built around the land and the husband’s mother’s home “had new plumbing, new top, cabinets put in it, new appliances” and had been painted “a couple of times.” The wife also testified that improvements had been made to a lake located on the 31-acre tract of land during the course of the parties’ marriage. The wife testified that the husband had told her that he had paid for the improvements. The husband denied having spent the parties’ money on improvements to the 31-acre tract of land. The husband testified that the new roof put on the husband’s mother’s house had been paid for by Alfa Insurance. The husband also testified that his brother-in-law had paid for the fence because he kept cattle on the 31-acre tract of land.
 

 The wife testified that, during the course of the marriage, she had had numerous credit accounts totaling $36,640.34, all of which had a balance of zero at the time of the trial. The husband testified that he had borrowed approximately $60,000, secured by his interest in the 31-acre tract of land, to pay off the wife’s credit-card debt and other bills that the parties had been behind on; at the time of the trial, approximately $58,000 of indebtedness remained outstanding on that loan.
 

 In 2000, Harold Gains gave the daughter $5,000 on her third birthday for the purpose of starting a college fund for the daughter’s college education. Gains and the husband had subsequently continued to deposit money into the daughter’s college fund. The wife admitted that she had withdrawn money from the daughter’s college fund between 2000 and August 16, 2007; the account has since been closed. The wife testified that she had withdrawn money from the daughter’s college fund in
 
 *527
 
 order to buy groceries. The wife had also withdrawn $2,000 from the college fund in order to purchase living-room furniture; the wife testified that the husband had consented to those withdrawals. The wife denied that she had “depleted [the daughter’s] college fund.” The husband testified that he had taken $2,000 from the daughter’s college fund in order to purchase an engine but that he had put $2,000 back into the account.
 

 On October 29, 2007, the wife sued the husband for a divorce on the grounds of incompatibility and an irretrievable breakdown of the marriage. The wife also sought pendente lite relief, requesting sole possession of the marital residence and sole custody of the daughter. On November 14, 2007, the husband filed an answer and a counterclaim requesting custody of the daughter.
 

 Following a pendente lite hearing held on January 10, 2008, the trial court awarded the wife pendente lite physical and legal custody of the daughter, granted the husband visitation, and ordered the husband to pay child support in the amount of $200 per month. The trial court further awarded the wife exclusive possession of the marital residence pending the resolution of the divorce action and ordered her to be responsible for the mortgage on the marital residence.
 

 After an ore tenus hearing on January 13, 2009, the trial court entered a judgment on July 8, 2009, divorcing the parties on the grounds of incompatibility of temperament and an irretrievable breakdown of the marriage. The divorce judgment, among other things, ordered that the marital property, which included the marital residence and the single-wide trailer, be sold and that the proceeds be used to pay off the parties’ debts in the following order: the debt on the marital property, totaling approximately $66,000; the $46,000 debt associated with the repair shop; the wife’s credit-card debt;
 
 [1]
 
 and, lastly, reimbursement of the daughter’s college fund. The husband was awarded, as his separate estate, his interest in the 31-acre tract, as well as the 8.5-acre and the 5-acre tracts of land and the debt associated therewith, if any debt remained on the 8.5-acre and 5-acre tracts of land following the application of the proceeds from the sale of the marital property. The wife was awarded exclusive use of the marital residence and was ordered to pay the mortgage thereon until it sold. The judgment further awarded the parties joint legal and physical custody of the daughter, granting the husband specific custodial periods, and ordered the husband to pay $200 per month in child support. The judgment did not order either party to pay alimony. The judgment also awarded the wife the 2009 Chevrolet Impala and ordered her to be and responsible for the automobile loan she had used to purchase the vehicle and awarded the husband the parties’ 1998 Ford Explorer and 1999 Ford truck.
 

 On August 7, 2009, the wife filed a motion for a new trial, which was denied by operation of law. The wife appealed.
 

 The wife argues on appeal that the trial court exceeded its discretion by not awarding her periodic alimony or by not reserving the issue of periodic alimony for future consideration; by inequitably dividing the marital property; by failing to include certain property in the marital estate and by determining that the property was part of the husband’s separate estate because he
 
 *528
 
 had acquired it before the parties’ marriage; by not awarding her primary physical custody of the daughter; and by allegedly not considering the husband’s ability to earn income in calculating the amount of the husband’s child-support obligation.
 

 We will first review the wife’s arguments concerning the trial court’s failure to award her periodic alimony and its division of the marital property. This court set forth the well established standard by which we review judgments based on ore tenus evidence in
 
 Farmers Insurance Co. v. Price-Williams Associates, Inc.,
 
 873 So.2d 252 (Ala.Civ.App.2003):
 

 “ ‘When ore tenus evidence is presented, a presumption of correctness exists as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.
 
 J & M Bail Bonding Co. v. Hayes,
 
 748 So.2d 198 (Ala.1999);
 
 Gaston v. Ames,
 
 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court “will assume that the trial judge made those findings necessary to support the judgment.”
 
 Transamerica Commercial Fin. Corp. v. AmSouth Bank,
 
 608 So.2d 375, 378 (Ala.1992). Moreover, “[u]nder the
 
 ore tenus
 
 rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.”
 
 Transamerica,
 
 608 So.2d at 378. However, when the trial court improperly applies the law to [the] facts, no presumption of correctness exists as to the trial court’s judgment.
 
 Allstate Ins. Co. v. Skelton,
 
 675 So.2d 377 (Ala.1996);
 
 Marvin’s, Inc. v. Robertson,
 
 608 So.2d 391 (Ala.1992);
 
 Gaston,
 
 514 So.2d at 878;
 
 Smith v. Style Advertising, Inc.,
 
 470 So.2d 1194 (Ala.1985);
 
 League v. McDonald,
 
 355 So.2d 695 (Ala.1978). “Questions of law are not subject to the ore tenus standard of review.”
 
 Reed v. Board of Trustees for Alabama State Univ.,
 
 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal.
 
 Ex parte Cash,
 
 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo.
 
 Allstate,
 
 675 So.2d at 379 (“[W]here the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.”).’ ”
 

 873 So.2d at 254-55 (quoting
 
 City of Prattville v. Post,
 
 831 So.2d 622, 627-28 (Ala.Civ.App.2002)). Further,
 

 “ ‘matters of alimony and property division rest soundly within the trial court’s discretion, and rulings on those matters will not be disturbed on appeal except for a plain and palpable abuse of discretion.
 
 Welch v. Welch,
 
 636 So.2d 464 (Ala.Civ.App.1994). Matters of alimony and property division are interrelated, and the entire judgment must be considered in determining whether the trial court abused its discretion as to either of those issues.
 
 Willing v. Willing,
 
 655 So.2d 1064 (Ala.Civ.App.1995).... Further, a division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court.
 
 Id.’ ”
 

 McCartney v. McCartney,
 
 11 So.3d 213, 217 (Ala.Civ.App.2007) (quoting
 
 Henderson v. Henderson,
 
 800 So.2d 595, 597 (Ala.Civ.App.2000)).
 

 The trial court ordered that the proceeds from the sale of the marital property be applied first to the debt on the marital
 
 *529
 
 property. The remaining proceeds, if any, were to be applied to the $46,000 debt on the husband’s separate property, then to the wife’s credit-card debt, then to reimburse the daughter’s college fund, and lastly to be split equally between the parties. However, the undisputed evidence shows that the wife’s credit-card debt at the time of the trial was zero. Therefore, the husband was awarded $46,000 from the sale of the marital property as well as his separate property — the 31-acre tract, as well as the 8.5-acre and 5-acre tracts of land. The only benefit the wife might have received from the division of the marital property was an equal portion of any funds remaining after all the other obligations were satisfied.
 

 The evidence concerning the value of the marital property indicated that the marital residence had been appraised for $110,000 and, based on the husband’s testimony, that the value of the single-wide trailer was approximately $7,000. The debt on the marital property totaled approximately $66,000, leaving approximately $51,000 to be applied to the $46,000 debt on the husband’s separate property. The remaining funds, approximately $5,000, were to be used to reimburse the daughter’s college fund. The evidence indicates that the amount to be reimbursed to the daughter’s college fund was at least $5,000. Essentially, the wife is left with nothing from the division of the marital property. Further, the wife was not awarded periodic alimony or an allowance from the husband’s separate property.
 

 In
 
 Mayhann v. Mayhann,
 
 820 So.2d 836 (Ala.Civ.App.2001), this court reversed a trial court’s divorce judgment because it failed to award the wife an allowance from the husband’s separate property, which this court determined was “ ‘used regularly for the common benefit of the parties during their marriage.’ ”
 
 Mayhann,
 
 820 So.2d at 839 (quoting § 30-2-51(a), Ala. Code 1975). The trial court had awarded the wife “only $350 per month in periodic alimony for a period of two years, a 1991 Honda Accord automobile, a bedroom suite, a set of cookware, and a set of china.”
 
 Id.
 
 Based on our supreme court’s holding in
 
 Ex parte Durbin,
 
 818 So.2d 404 (Ala.2001), this court held:
 

 “The [Supreme] Court explained that, while the trial court
 
 may,
 
 at its discretion, award one spouse an allowance out of the other spouse’s separate property, it is not compelled to do so, even if the property was used for the common benefit of the marriage.
 
 Ex parte Durbin,
 
 818 So.2d [404,] 408 [ (Ala.2001) ]. This court cannot reverse the trial court simply because it failed to award the wife an allowance out of the marital residence and rental house. However, we can consider whether the trial court abused its discretion in failing to do so.”
 

 Mayhann,
 
 820 So.2d at 839. This court determined that the trial court had exceeded its discretion, and we reversed the trial court’s judgment as to the division of property and award of alimony. This court also remanded the trial court’s judgment in order for the trial court to award the wife an equitable share of the marital estate.
 

 In the case at hand, we conclude, based on the testimony at trial, that each of the three parcels of land composing the husband’s separate property were “used regularly for the common benefit of the parties during the marriage.” § 30-2-51(a), Ala.Code 1975. The husband used his interest in the 31-acre tract of land as collateral to borrow approximately $60,000 in order to pay off the wife’s credit-card debt and other bills the parties were behind on. Likewise, the husband used the 8.5-acre and 5-acre tracts of land in order to secure debt associated with the sale of
 
 *530
 
 the repair shop, which was used throughout the parties’ marriage as the primary source of income.
 

 The trial court awarded the husband $46,000 from the marital property as well as his separate property; the wife was essentially awarded nothing. We hold that, just as in
 
 May harm,
 
 we must reverse the trial court’s judgment insofar as it divided the parties’ property and failed to award the wife periodic alimony, because of its inequity. On remand, the trial court should adjust the property division and alimony award as it considers appropriate in order to award the wife an equitable share of the parties’ marital estate.
 

 Next, the wife argues that the trial court exceeded its discretion “in both the determination of child custody and the calculation of child support according to the Child Support guidelines” under Rule 32, Ala. R. Jud. Admin.
 

 Although the wife generally alleges that the trial court exceeded its discretion in its determination of custody, the wife provides no legal authority to support her claim, and it is not this court’s function to create legal arguments for an appellant. Rule 28(a)(10), Ala. R.App. P.;
 
 see also Asam v. Devereaux,
 
 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (“[Ajppellate courts do not, ‘based on undelineated propositions, create legal arguments for the appellant.’
 
 McLemore v. Fleming,
 
 604 So.2d 353, 353 (Ala.1992). This court will address only those issues properly presented and for which supporting authority has been cited.”).
 

 The wife also argues that the trial court erred in failing to find the husband underemployed and, thereby, failing to impute more income to the husband. This court has held that
 

 “[t]he trial court is afforded the discretion to impute income to a parent for the purpose of determining child support, and the determination that a parent is voluntarily unemployed or underemployed ‘is to be made from the facts presented according to the judicial discretion of the trial court.’
 
 Winfrey v. Winfrey,
 
 602 So.2d 904, 905 (Ala.Civ.App.1992).
 
 See also
 
 Rule 32(B)(5), Ala. R. Jud. Admin.”
 

 Clements v. Clements,
 
 990 So.2d 383, 394 (Ala.Civ.App.2007).
 

 At the time of trial, the husband was making $250 per week while employed at the repair shop. The husband testified that he could potentially earn more money if he traveled but that spending time with the daughter and his other family was more important to him. Before 1994, when the husband built and opened the repair shop, the husband was licensed to operate heavy machinery; his license has since expired. The husband had also worked as a welder, but he has not welded since before he opened the repair shop in 1994. The evidence supports the trial court’s decision to not impute to the husband a greater income than he was earning at the time of the trial.
 

 Moreover, in order for the trial court to have determined that the husband was voluntarily underemployed, the wife had the burden of producing evidence demonstrating the husband’s potential employment income.
 
 See G.B. v. J.H.,
 
 915 So.2d 570, 575 (Ala.Civ.App.2005). The wife failed to provide any evidence indicating the husband’s alleged true earning potential. Therefore, for this reason as well, the trial court’s judgment as to this issue is not plainly and palpably wrong.
 

 For the reasons stated above, we reverse the trial court’s judgment insofar as it divides the parties’ martial property, and we remand the cause for the trial court to make a more appropriate property division and to consider whether an award of ali
 
 *531
 
 mony is warranted. In all other requests, we affirm the trial court’s judgment.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN and BRYAN, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 [1]
 

 . We note that the wife testified that all of her credit-card debt had been satisfied as of the time of trial.